IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

ELISHA G.,[1]                                                    Case No. 2:22-CV-00045-HL

                Plaintiff,                              **OPINION AND ORDER**

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Elisha G.brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's application for Social Security Income

("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision

of the Commissioner is REVERSED and REMANDED for further proceedings.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on right hip degeneration, PTSD, and anxiety. Tr. 377.[2]
At the time of her alleged onset date, she was 26 years old. Tr. 383. She has a ninth grade level
education and no past relevant work.  Tr. 131, 378.

Plaintiff protectively applied for SSI on August 14, 2017, alleging an onset date of
September 1, 2009. Tr. 185.  Her application was denied initially on January 24, 2018, and on
reconsideration on May 17, 2018. Tr. 195, 206-7. Plaintiff subsequently requested a hearing,
which was held on August 15, 2019 before Administrative Law Judge ("ALJ") Marie Palachuk.
Tr. 166. Plaintiff appeared unrepresented by counsel; a vocational expert ("VE"), Diane Kramer,
also testified. Tr. 166. On September 25, 2019, the ALJ issued a decision denying plaintiff's
claim. Tr. 212-228

Plaintiff requested Appeals Council review, and on July 15, 2020, the Appeals Council
remanded the case in light of the ALJ's failure to confirm at the hearing that plaintiff was
advised of her right to representation. Tr. 229-32. ALJ Palachuk held an additional hearing on
December 23, 2020. Tr. 138. Plaintiff appeared and testified at the hearing, represented by
counsel; VE Erin Martz, also testified. Tr. 118. On January 27, 2021, the ALJ issued a decision
denying Plaintiff's claim. Tr. 118-132. Plaintiff requested Appeals Council review, which was
denied on November 10, 2021. Tr. 1-6. Plaintiff then sought review before this Court.[3]

---

[2] Citations to "Tr." are to the Administrative Record.  (ECF 12).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. §
636. (ECF 4).

PAGE 3 – OPINION AND ORDER

II.     **Sequential Disability Process**

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any

limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful since August 14, 2017, the date of her application. Tr. 121.

At step two, the ALJ determined that plaintiff has the following severe impairments: right-sided S1 radiculopathy, obesity, persistent depressive disorder (dysthymia), and anxiety disorder. Tr. 121.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 122. The ALJ then resolved that plaintiff had the residual function capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> She is limited to standing/walking 30 minutes at a time for a total
> of 4 hours in an 8-hour workday, and therefore needs the ability to
> alternate sitting/standing positions every 30 minutes. She can
> frequently perform postural activities with the exception of
> occasional climbing of ladders, ropes, and scaffolds, and

occasional stooping and crawling…She is limited to no interaction
with the public, and should work with things rather than people.

Tr. 124.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 131.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a collator-operator, small products assembler I, and production assembler. Tr. 132. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 132.

## DISCUSSION

Plaintiff alleges three errors: (1) the Appeals Council improperly evaluated new medical evidence; (2) the ALJ failed to provide clear and convincing reasons to discount plaintiff's symptom testimony; and (3) the ALJ failed to incorporate all the medical findings into the RFC.

For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is reversed and remanded for further proceedings.

## I.    New Evidence

Plaintiff first contends that the Appeals Council "improperly evaluated" new and material evidence and that, "in light of the new evidence, the ALJ's medical opinion analysis cannot be supported by substantial evidence." Pl.'s Opening Br. 9. Defendant argues that the Court lacks jurisdiction to review this new evidence and that, even if the Court could consider the new evidence, the ALJ's decision is still supported by substantial evidence.

When the Appeals Council denies a request for review, as it did here, "it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Where the Appeals Council considers additional evidence in denying a request for

review, the Court may also consider that evidence in reviewing the final decision of the Commissioner. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

Plaintiff argues that this Court must consider the additional records[4] submitted to the Appeals Council in deciding whether the ALJ's decision was supported by substantial evidence because the Appeals Council "fully considered the evidence" and "fully incorporated the evidence into the administrative record after stating it was not relevant to the time period." Pl.'s Reply Br. 3. However, the Appeals Council did neither. As explained in *Ruth v. Berryhill*, No. 1:16-CV-0872-PK, 2017 WL 4855400, *9 (D. Or. Oct. 26, 2017), "[c]onsider" is a term of art in the context of the Appeals Council's denial of request for review." The Appeals Council may "look at" evidence to make a threshold determination of relevancy, but the evidence is only formally "considered" when it is considered on its merits. *Id.* In *Ruth*, the court held that evidence which the Appeals Council only looks at to determine it relates to a different time period than is relevant to a claimant's disability is not "considered" in the sense required to allow judicial review. *Id.* That rationale is supported by the regulations, which state that the Appeals Council will "not accept" additional evidence "that does not relate to the period on or before the date of the administrative law judge hearing decision" and where the claimant has not shown "good cause" for failing to submit the evidence earlier. 20 C.F.R. §§ 404.970(b), 416.1470(b)

Here, just as in *Ruth*, the Appeals Council looked at the evidence only to determine that it "does not relate to the period at issue." Tr. 2. Nowhere in the Appeals Council's notice or order does it state that it "considered" the evidence in the sense that plaintiff argues it did, nor did it "accept" or "receive" the evidence in the formal sense. Tr. 2-6. In fact, where the Appeals

---

[4] This evidence consists of medical records from Grand Ronde Hospital Rheumatology, Tr. 8-11, and St. Luke's Health System, Tr. 15-114, which include a fibromyalgia diagnosis.

PAGE 7 – OPINION AND ORDER

Council *did* consider evidence (e.g. plaintiff's request for review, which included reasons she disagreed with the ALJ's decision) on the merits in this case, it explicitly stated that it "considered" the evidence and then "received [that] additional evidence" and made it "part of the record." Tr. 1, 6. The Appeals Council's comparative treatment of this evidence underscores that it did not intend to treat the contested medical evidence the same way. It was not included as an exhibit and the Appeals Council did not make it part of the administrative record as plaintiff argues.[5] Accordingly, the Court will not consider this evidence to evaluate whether the ALJ's analysis of the medical opinion evidence was supported by substantial evidence and therefore does not address plaintiff's arguments as to that opinion evidence, which explicitly rely on the new evidence.

Although plaintiff also states that "this case should be remanded given the new evidence," Pl. Opening Br. 8, the authority she cites in support is inapposite. In *Taylor*, there was no indication the Appeals Council looked at the new evidence at all. 659 F.3d at 1232-33. As multiple courts in the Ninth Circuit have explained, *Taylor* is confined to those facts. *See, e.g., Ruth*, 2017 WL 4855400 at *10; *Will v. Colvin*, No. 3:14-CV-00754-JE, 2016 WL 3450842 (D. Or. May 18, 2016), *report and recommendation adopted,* No. 3:14-CV-00754-JE, 2016 WL 3457017 (D. Or. June 20, 2016); *Sahagun v. Saul*, No. 18-CV-02119-BAS-RBM, 2019 WL

---

[5] Plaintiff presumably makes this argument because the documents are included in the record submitted to this Court by the Commissioner. However, rejected evidence is included as a matter of agency policy. *See* Soc. Sec. Admin. Hrgs., Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-3-5-20, available at https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (noting that evidence not marked as an exhibit shall still be included in the certified administrative record). The fact that Commissioner did so does not transform these records into evidence that the Appeals Council considered. *See, e.g., Zuma L.-B. v. Berryhill*, No. 3:18-CV-01101-YY, 2019 WL 4131097, at *6 (D. Or. Aug. 6, 2019) (noting that evidence included in the administrative record but clearly not "considered" or exhibited by the agency is not reviewable), *report and recommendation adopted sub nom. Zuma L.-B. v. Saul*, No. 3:18-CV-1101-YY, 2019 WL 4120806 (D. Or. Aug. 29, 2019)

2717270, *5-6 (S.D. Cal. June 28, 2019); *Hernandez v. Berryhill*, No. 1:17-CV-00483-SKO, 2018 WL 2021021, at *5 n. 9 (E.D. Cal. May 1, 2018). Here, in contrast, the Appeals Council explicitly looked at and rejected the new evidence. Under these circumstances, there is no authority which would permit the Court to remand under sentence four of 42 U.S.C. § 405(g) as plaintiff requests.

Rather, sentence six is "the proper vehicle for addressing an Appeals Council's improper belief that a medical opinion concerned a time before the ALJ's decision." *Knipe v. Colvin*, No. 3:14-cv-01533-SI, 2015 WL 9480026, at *5 (D. Or. Dec. 29, 2015). It allows for remand "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). But plaintiff did not request this relief, nor did she provide any argument that would allow this Court to find that it is warranted (i.e. there are no facts or arguments in the record regarding whether plaintiff can meet the "good cause" standard). The Court cannot remand under this authority, either.

The Court is without jurisdiction to consider the new evidence in its evaluation of the ALJ's decision and lacks the authority to order remand under the present facts and posture of the case.

## II.    Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A.    *Testimony*

With respect to her physical conditions, plaintiff testified that her conditions make her whole right leg numb, and make it difficult to lift things or to sleep. Tr. 176. She stated that there is "always" a "burning radiating pain" like a "hot poker" from her right lower back to her right foot. Tr. 145. She claimed she can only stand for ten minutes at a time before needing to sit down. Tr. 177-78. Standing irritates her condition. Tr. 145. She can sit for three to three and a

half hours before needing to move around. Tr. 145. She spends about half of her day laying down due to the pain. Tr. 146. She does not do much because "everything I do is uncomfortable." Tr. 179.

On her mental conditions, plaintiff testified that she feels depressed "every single day," and that it makes her sad, irritable, and like she does not want to do anything. Tr. 149. When she needs to leave the house, she gets anxiety "very badly" and gets "physically sick sometimes." Tr. 150. She testified that she gets anxious or has panic attacks "even if there's only a few people around," and has had to leave shopping carts full of food in the store during an episode. Tr. 150.

After summarizing plaintiff's hearing testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 126. In discounting the testimony, the ALJ relied on the following rationales: that the testimony is undermined by her failure to seek treatment; that the testimony conflicts with the medical evidence; that the testimony conflicts with her daily activities; and that plaintiff's testimony is undermined by her lack of work history. Plaintiff argues these are not clear and convincing reasons, supported by substantial evidence, for discounting her testimony. The Court addresses each rationale in turn.

B.    *Failure to Seek Treatment*

As to the first reason, a claimant's treatment record is relevant to an ALJ's evaluation of subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). Indeed, "[u]nexplained, or inadequately explained, failure to seek treatment," absent a good reason, can suffice as a clear and convincing rationale to discount testimony. *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989). However, ALJs are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted); *see also* SSR 16-3p at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Here, as to plaintiff's physical conditions, the ALJ discounted her testimony on the severity of her allegedly disabling pain because her treatment had been "minimal" and "conservative." Tr. 126. But plaintiff testified to several reasons she had not sought more treatment. For example, plaintiff noted that she had received treatment in the past but did not find it to be helpful. Tr. 177. She has tried several different medications and "nothing has really helped." Tr. 144. While chiropractic care would help "for a couple weeks," then she would "be in pain again." Tr. 177. She also specifically noted that, especially considering how little she felt that it helped, it was "expensive." Tr. 177. Indeed, the record contains evidence that plaintiff had a "lapse in care" due in part to a lack of insurance. Tr. 551. Plaintiff also noted that her anxiety and agoraphobia make it difficult for her to leave the house and interact with people. Tr. 181. She testified that when she needs to leave the house for something, she gets anxiety "very badly" to the point of feeling physically ill, and will put it off or sometimes not go at all. Tr. 150. A treating provider corroborated this, noting that "this diagnosis makes it difficult for her to keep appointments." Tr. 578. The ALJ erred in failing to consider these reasons for plaintiff's minimal and conservative treatment of her physical pain.

The ALJ similarly failed to account for plaintiff's reasons for the state of her treatment record as to her mental health symptoms. As the Ninth Circuit has recognized, "it is a

questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (internal quotation marks omitted); *see also Lord v. Berryhill, No.* 6:17-cv-00255-SI, 2018 WL 1811472, at *6 (D. Or. Apr. 16, 2018) (holding a "lack of medical treatment" was not "a clear and convincing reason to discount [the claimant's] testimony regarding his mental health limitations"); *see also Claire G. v. Berryhill*, No. 3:18-cv-00492-HZ, 2019 WL 2287733, at *10 (D. Or. May 28, 2019) (holding ALJ erred in "fail[ing] to explore why [the claimant] had only sporadic mental health treatment"). That is especially true here, where plaintiff specifically testified—and her treatment record corroborates—that obtaining treatment was difficult for her due to her conditions. Tr. 174, 578. The ALJ failed to account for this reason when she rejected plaintiff's subjective symptom testimony as to her mental health symptoms.

Failure to seek treatment is therefore not a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

C.    *Contradictory Medical Evidence*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony on her physical symptoms was contradicted by "physical examinations in 2014, 2015, and 2016 [which] indicated claimant had full 5/5 strength, no cranial nerve deficits, normal reflexes, and normal sensation." Tr. 127. It is rational to conclude that normal sensation, reflexes, and strength contradicts plaintiff's testimony that her "whole right leg goes numb," Tr. 176, and the Court will therefore not disturb that conclusion. While plaintiff argues that a new diagnosis of fibromyalgia makes these medical findings consistent with her testimony, that diagnosis is not in the record for the reasons addressed earlier in this opinion. Accordingly, based on the record before the Court, the ALJ's discounting of plaintiff's subjective physical symptom based on contradictory medical evidence is clear and convincing, and supported by substantial evidence.

As to plaintiff's mental health symptom testimony, the ALJ discounted it based on the fact that her "objective mental health status exams appear to remain largely within normal limits" despite a recent worsening. Tr. 128. But an ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan*, 246 F.3d at 1207 ("[T]he ALJ selectively relied on some entries in [the claimant's] records . . . and ignored the many others that indicated continued, severe impairment."); *see also Garrison,* 759 F.3d at 1017 (noting the cyclical nature of mental health diagnoses and instructing caution in drawing inferences based upon reports of improvements during treatment). Here, the record contains many observations which support plaintiff's testimony. *See, e.g.*, Tr. 511 ("tearful at times" depressed mood); 514 ("depressed mood"); 517 ("Positive for depression and suicidal ideas…patient is nervous/anxious and has insomnia"); 547 ("flat affect"); 565 ("affect

restricted, anxious, not labile, congruent with stated mood"); 568 ("positive for

nervous/anxious"); 622 ("anxious" and "tearful"). Although there are some "normal"

observations, their significance is undermined by the fact that they are frequently made during

the course of examinations which clearly acknowledge plaintiff's mental health problems. And,

more telling than these routine observations, a mental health assessment resulted in a score of 23,

which the ALJ acknowledged was "in the range of significant depression." Tr. 128, 621.

Further, a holistic review of the record supports plaintiff's testimony regarding the

severity of her mental health symptoms. She started medication and counseling for mental health

when she was ten years old and has a history of self-harm and attempting suicide. Tr. 68, 174,

512, 516, 631. Her physician noted that she could not "leave the house without having

anxiety/fear." Tr. 507. Viewing the record as a whole, the ALJ lacked substantial evidence to

discount plaintiff's mental health symptom testimony based on a conflict with the medical

records.

In sum, while the ALJ's reasoning for discounting plaintiff's physical symptom

testimony is clear and convincing and supported by substantial evidence, the record lacks

substantial evidence to support the ALJ's discounting of plaintiff's mental health symptom

testimony.

D.    *Daily Activities*

The ALJ also rejected plaintiff's subjective symptom testimony—as to both her physical

and mental symptoms—as inconsistent with her reported daily activities and functioning. Tr.

127-28. Activities of daily living can form the basis for an ALJ to discount a claimant's

testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold

for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Here, plaintiff testified that she takes her daughter to school in the mornings. Tr. 179. She does some laundry and dishes, but can only stand for eight to ten minutes at a time. Tr. 179. She cooks, which includes "sandwiches, frozen dinners/lunches, salads, mac [and] cheese." Tr. 397-98. She will go grocery shopping for twenty to thirty minutes at a time if she has somebody to help her, but occasionally has panic attacks and has had to leave "shopping carts full of food and went out to [her] car because [she] couldn't do it." Tr. 150, 180, 399. She helps her daughter with homeschooling for an hour to an hour and a half at a time, but does so on her bed so that she can lay down. Tr. 146, 148, 180.

The ALJ concluded that plaintiff's ability to "care for her children, prepare meals, travel independently by driving, shop in stores, and complete light housework including laundry, dishes and cleaning counters" was inconsistent with her allegations of disabling physical pain. Tr. 127. The ALJ discounted her mental symptom testimony for the same reasons, in particular noting that her "ability to drive and shop in stores is inconsistent with her reported issues of anxiety when leaving the house." Tr. 128.

But the ALJ's cursory mention of daily activities fails to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). As this Court has repeatedly held, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021). In other words, other than generally identifying these activities, the ALJ

failed to explain how they undermined plaintiff's subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject plaintiff's testimony. *See David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted).

The only exception to the above failure to articulate the nature of the inconsistency is the ALJ's rationale regarding inconsistency between plaintiff's ability to drive, shop, and "go four wheeling on a regular basis" with her testimony that she has issues with anxiety when leaving the house. Tr. 128. But this rationale is not supported by substantial evidence. The ALJ ignores plaintiff's testimony as to the limitations of her ability to shop and to drive. She specifically noted that she can only shop for limited periods of time, has help, and still sometimes experiences panic attacks. Tr. 150, 180, 399. Likewise, she noted that she often puts off leaving the house and sometimes cannot leave the house at all due to anxiety. Tr. 150. Plaintiff also specifically noted that she cannot ride ATVs anymore due to her conditions, which supports her testimony rather than undermining it. Tr. 400. Nothing about her reported daily activities is inconsistent with the severity of the mental health symptoms she testified to. Inconsistency with daily activities is therefore not a clear and convincing reason, supported by substantial evidence, for disregarding plaintiff's subjective symptom testimony.

E.    *Work History*

Finally, the ALJ discounted plaintiff's subjective symptom testimony as a whole due to her "very poor work history" and her comments in the record that she hoped to obtain a part-time job when her daughter started elementary school. Tr. 128-29. An ALJ may consider a claimant's poor work history in assessing her credibility. *See Thomas*, 278 F.3d at 959. In particular,

"[e]vidence of a poor work history that suggests a claimant is not motivated to work is a proper

reason to discredit a claimant's testimony that [they are] unable to work" *Franz v. Colvin*, 91 F.

Supp. 3d 1200, 1209 (D. Or. 2015).

Here, the ALJ failed to draw a rational causal connection between the evidence of poor

work history and her subjective symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487,

494 (9th Cir. 2015) (an ALJ must "link" the testimony they find not credible "to the particular

parts of the record supporting [their] non-credibility determination"); *see also Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (an "ALJ must identify the

testimony that was not credible, and specify what evidence undermines the claimant's

complaints") (citation and quotations omitted). The Court is left to guess[6] what the ALJ meant

and how she believed plaintiff's poor work history and statement that she "is optimistic about her

daughter starting elementary school in the fall, which will allow [her] to take a [part time] job,"

Tr. 510, undermines her symptom testimony. Without that rationale, the Court cannot provide a

meaningful analysis or evaluation of whether such rationale is supported by substantial evidence.

*See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court

should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain

evidence); *see also Treichler*, 775 F.3d at 1103 ("Although the ALJ's analysis need not be

extensive, the ALJ must provide some reasoning in order for us to meaningfully determine

whether the ALJ's conclusions were supported by substantial evidence."). Accordingly, this was

not a valid rationale for discounting plaintiff's symptom testimony.

---

[6] It is especially difficult for the Court to extrapolate the ALJ's rationale here, because the two
observations—that plaintiff has a poor work history and that she stated she hoped to be
employed—are in tension with one another and the latter observation undermines the rationale
that plaintiff lacks motivation to work.

In sum, although the ALJ provided a clear and convincing reason for rejecting plaintiff's subjective symptom testimony as to her physical symptoms, she did not do so with respect to plaintiff's mental symptoms. The failure to provide a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's mental symptom testimony was harmful error.

## III.     Lay Witness Testimony

Plaintiff next argues[7] that the ALJ failed to consider lay witness testimony regarding her symptoms, contending that such testimony "cannot be disregarded without comment." Pl. Opening Br. 21. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id.* at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Third-party function reports and letters from plaintiff's husband, son, and friend corroborate plaintiff's own reports regarding her physical and mental symptoms. Tr. 420-27, 457-60. At step three, the ALJ did not discuss this testimony, instead noting that she has no requirement to do so pursuant to 20 C.F.R. § 404.1520c(d), but that she had "considered them." Tr. 131.

---

[7] Although plaintiff includes this in her argument regarding subjective symptom testimony, it has a different standard of review, and pertains to different evidence. The Court therefore will consider it separately.

The parties disagree about whether the Commissioner's revised regulations require the ALJ to articulate germane reasons for rejecting lay witness testimony. The relevant regulation provides: "[w]e are not required to articulate how we considered evidence from nonmedical *sources using the requirements in paragraphs (a)-(c) in this section*." 20 C.F.R. § 404.1520c(d) (emphasis added). Defendant's argument would render the highlighted part of the sentence superfluous. *See Jerri F. v. Kijakazi*, 1:20-4037-RMG-SVH, 2021 WL 3362227, *14 (D.S.C. July 29, 2021) ("If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous"), *report and recommendation adopted*, CV 1:20-4037-RMG, 2021 WL 3396230 (D.S.C. Aug. 3, 2021). Thus, although the regulations no longer require the application of the requirements (a)-(c), they "do not eliminate the need for the ALJ to articulate analysis of lay-witness statements." *Jason R. v. Comm'r, Soc. Sec. Admin.*, 6:20-CV-01981-MK, 2022 WL 981329, *9 (D. Or. Jan. 21, 2022), *report and recommendation adopted*, 6:20-CV-01981-MK, 2022 WL 980880 (D. Or. Mar. 31, 2022).[8]

Defendant's citation to the Revisions to Rules Regarding the Evaluation of Medical Evidence is flawed for the same reason, because defendant fails to quote the last clause of the sentence:

> We added regulatory text in final 404.1520c(d) and 416.920c(d) for claims filed on or after March 27, 2017, that there is no requirement to articulate how we considered evidence from

---

[8] The Court notes that defendant cites one case which has held otherwise. Def. Resp. Br. 17-18. It appears that district courts have come to differing conclusions on this issue. Indeed, the most recent case defendant cites on this issue notes that "[t]he question of how the 2017 rule change impacts the ALJ's obligations with respect to addressing lay witness testimony is unanswered in the current caselaw" and in fact does not even reach the issue of how to settle the conflict in the caselaw. *Ellen S. v. Kijakazi*, No. 5:20-CV-01940-GJS, 2022 WL 221225, *6-7 (C.D. Cal. Jan. 24, 2022). The Court finds the reasoning of the above cases more persuasive than that cited by defendant on the issue.

> nonmedical sources about an individual's functional abilities and
> limitations *using the rules for considering and articulating our*
> *consideration of medical opinions found in final 404.1520c and*
> *416.920c.*

82 Fed. Reg. 5,844, 5850 (Jan 18, 2017) (emphasis added). Accordingly, the ALJ erred by failing

to articulate germane reasons for discounting[9] the lay witness without comment.

Although this lay witness evidence largely mirrors plaintiff's own, the ALJ's failure to

provide germane reasons for discounting it is not harmless. An ALJ's failure to provide germane

reasons for rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's

testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122.

But here, as discussed above, the ALJ failed to provide legally sufficient reasons supported by

substantial evidence for rejecting plaintiff's testimony regarding her mental limitations. Because

this evidence pertains to those same limitations, the ALJ's failure to articulate germane reasons

for rejecting it was harmful error.

## III.    RFC Determination

Plaintiff's final assignment of error is that the ALJ's RFC fails to account for all the

evidence. The RFC must contemplate *all* medically determinable impairments, including those

which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions

of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R.

§§ 404.1545, 404.1545; SSR 96–8p. In formulating the RFC, the ALJ is responsible for

resolving conflicts in the medical testimony and translating the claimant's impairments into

concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

---

[9] Although the ALJ does not explicitly state that the evidence was discounted, her failure to
include limitations in the RFC which are consistent with the lay witness testimony indicates that
she did.

2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's arguments that the RFC failed to account for all her functional limitations are specifically tied to the ALJ's rejection of the contested new medical evidence, plaintiff's symptom testimony, and the lay witness evidence. Thus, plaintiff has not articulated an independent error here; her success rises and falls on the success of her other assignments of error, already addressed above.

## IV.   Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Applying the requisite standard, for the reasons set forth below, the Court finds that the record is not free of conflict and ambiguity and therefore must be remanded for further proceedings.

### A.   *Legal Standard*

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

B.    *Analysis*

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been

fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101 (internal quotations and citations omitted).

Here, the record is not fully developed as to plaintiff's mental health limitations. Plaintiff testified to panic attacks and an inability to stay focused. Tr. 149-52. The VE testified that an individual missing approximately three days out of the month or who was off task fifteen to twenty percent of the time would not be employable. Tr. 158-160. But it is unclear based on the existing record whether plaintiff is such an individual. In other words, the record is underdeveloped as to how much plaintiff would be off task and how many hours a week she would likely miss due to her mental conditions, and there is no medical opinion evidence that speaks to this issue. Finally, it is unclear whether and to what extent plaintiff's more recent treatment for her mental health symptoms has improved her conditions and to what extent that may affect her functional limitations. *See, e.g.* Tr. 565 (noting some "some improvement" in depressive symptom in October 2020). Further proceedings are necessary to develop the record on plaintiff's mental health-related limitations.

The record is likewise underdeveloped as to plaintiff's physical limitations. She submitted additional evidence to the Appeals Council which, for the reasons addressed earlier in this opinion, this Court may not consider in its review of the ALJ's decision. However, based on the parties' briefing, it is apparent that there is substantial conflict regarding the relevance and impact of these records on the decision as to plaintiff's physical disability. Accordingly, remand is appropriate for the ALJ to take additional evidence and resolve the impact of these and any additional evidence on plaintiff's application.[10]

---

[10] The Court emphasizes that it does not find error in the Appeals Council's rejection of the new evidence, or in the ALJ's discounting of plaintiff's physical symptom testimony. But, having found error in the ALJ's evaluation of plaintiff's mental health limitations based on the existing

In light of the lack of a fully developed and unambiguous record, the Court will not credit the discounted testimony as true, and the appropriate remedy is to remand to the Commissioner for further proceedings. On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (2) accept the lay witness statements or provide legally sufficient reasons for rejecting them, (3) review any new evidence, and (4) as necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 1st day of February, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge

---

record evidence, the Court finds that the apparent existence of a new diagnosis creates an ambiguity which must be resolved on remand as to plaintiff's physical limitations.